May it please the court, I'm Andy Desimone and I represent Richard Carter. If I've learned anything in my time as a federal public defender, it's that federal judges have lots of ways to legitimately increase someone's punishment. There are enhancements, cross references, upward departures, upward variances, overrides, relevant conduct. All we're saying in this case is that federal judges should not be allowed to increase someone's punishment because they remained silent at sentencing. And the district court here explicitly stated that it was increasing Mr. Carter's punishment because he remained silent instead of naming his accomplice and also drew adverse inferences. Just before we get into the issue, I just want to make sure, do you really have any argument that, I mean, that's independent of the Fifth Amendment argument, do you have any argument that the guidelines calculation error is not squarely within the appeal waiver? No. There's this guidelines calculation issue and I was like, I don't see how that's not covered by the appeal waiver. Unless it sort of is a tag along to the Fifth Amendment, but as sort of any globalized guidelines issue. I'm trying to understand your question. Are you referring to issue two when we're talking about the substantive and procedural reason? Yeah, I don't see how that's not an appeal waiver. Even if you're right about the Fifth Amendment, I don't see how that's not it. The issue is that those two issues, the procedural and substantive reasonableness issues are inextricably intertwined. I mean, obviously, if you were to win the Fifth Amendment issue, we'd have to vacate and remand for resentencing, at which point the district court would have to do the sentence over again anyway. So I think this is a little bit of a, but there's no sort of separate argument. No. Okay. No. But you know, the problem with what the district court did is that naming an accomplice could have incriminated Mr. Carter. The state of North Carolina could have, and still could, prosecute him for robbery, assault, gun possession, kidnapping, any number of crimes. And naming an accomplice would be an admission that he participated in those crimes. How is a guilty plea not an admission that he participated in those crimes? He only pled guilty to two of the crimes, Your Honor. Okay. So then just walk me through that, because I think it's the Ninth Circuit case that says this, like naming an accomplice inherently incriminates you. And it's like, I mean, I can certainly see times when naming an accomplice would incriminate you, but it doesn't seem to me that it is inherent that name. So just walk me, I think you kind of have, but just walk me through the theory of how naming this accomplice could have potentially incriminated him. Sure. He pled guilty to one robbery and he pled guilty to possession of a firearm in furtherance of another. Okay. But, but that's it. Nothing about, for example, kidnapping. And how is saying, who is the person that you did this with incriminating? Because it's an admission, right, that you participated in those crimes. But, you know, the guilty, I want to say those crimes. He pleaded, I mean, to the extent you're saying it's an admission that you participated in those crimes, he pleaded guilty to those crimes. So he's already admitted to committing those crimes. Right. But in terms of, like, any other crimes that were committed in the course of conduct, right, if you've participated with someone else, then it's admission. And, you know, prosecutors are really good at turning statements into admissions and confessions. Identifying who your accomplice was in the crime that you pled to, is it admission that you committed another crime? It could, it could be, and it could lead to further evidence. The other, the other problem is, is just that, is that naming an accomplice with whom Mr. Carter committed some crimes, right, could have implicated him in other crimes that were not even the subject. So is it, is it the issue that if there's any possibility, we can sit around here and conjure up facts that, where that might be a possibility, that weren't raised by your client at the time, that we have a self-incrimination problem? No. No. But let me give you two, two frameworks to look at it through, okay? The first is the sort of black letter law that the Supreme Court has construed the privilege broadly, right, and says it, quote, does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the, in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution. And I think that last part, what an individual reasonably believes could incriminate him is important because it gets to the classic penalty situation problem here. Because, you know, in the classic penalty situation, the threat of additional punishment can be expressed or implied. Can I, can I stay? Sure. I should have said this at the beginning. I'm a little bit out of order, but let's, let's step back. You, you have an appellate waiver and our issue here is whether this is the sort of thing that is outside the scope of the appellate waiver. Is it, do you agree that I, that the constitutional or fundamental right principle that we've used to say, you know, issues can be outside the scope of waiver has to be firmly established? Yeah. Yes. And I think, you know, the longstanding rule here is that someone's silence cannot be used against them. This is just a slight twist on it in terms of the incrimination coming, you know, sort of vicariously through the naming of an accomplice. That's... Yeah, just, so before we get to the application of that principle, you agree it's got to be a firmly established constitutional right? Right. Okay. Wait, but isn't that directly inconsistent with something we literally just said? I'm trying to find the case that was issued in like the last month and a half where we say there are two different ones, firmly established or a constitutionally impermissible factor? I think that that's correct, right? So, right. We're saying this is a constitutionally impermissible saying those are disjunctive. I think you're right, Judge Hytens, my apology. You know, singletary is a good example. Well, no, but that's, I will say, that seems really important to me, actually, it turns out. Right, right. And there are cases, and I mean, they're not, you know, we just talked about something else that's a little unclear. I mean, you read our cases on this issue and sometimes, you know, how we describe them is one way, sometimes they're another way. And I think Judge Hytens is right and, but if you look at that more recent case, you know, there's a question, it seems to me, about whether that's any constitutional violation or whether that's using something like race or gender or something like that. So, I'm not sure if that's a broad, any constitutional issue or certain constitution. Well, Judge Quattlebaum, I think, you know, so I think the distinction is like the case like Archie that the government relies on would be that sort of firmly established. And then there's the cases like Attar, up through DeLuca, up through Singletary just last month, right, where when you plead guilty, any appeal waiver is implicitly conditioned on the assumption that everything that follows the plea will comport with constitutional limitations, right? And so in Singletary, just last month, this court held that the execution of a general appeal waiver, quote, is implicitly conditioned on the assumption that he will be sentenced free from the trial court's vindictiveness. And just like judicial vindictiveness, a judge increasing someone's punishment for remaining silent should just have no place whatsoever in federal sentencing. So I thought you were going to cite Singletary, but not for that proposition. I thought it's earlier when Singletary says that we declined to enforce a valid appeal waiver, one, where the court violated a fundamental rule that's clearly established, or where the court based its sentence on a constitutionally impermissible factor such as race. And then the very next sentence of Singletary says, these exceptions, plural, implying that these are separate exceptions. Do you agree with that? Yes. Now there's the point that Judge Qualibam asks about whether such as race is broad enough to cover this. I totally agree with that. Can I ask you what strikes me as the biggest problem for you? So I think it's plausible your client could have, I take your, so I'm skeptical that literally naming his accomplice would directly incriminate him. But I also recognize the court has said, if you have concerns that it will lead to a chain of events, and I could see, name your accomplice here, and then they sort of, the police start investigating that person, and they discover that that person committed a string of other robberies with a then unidentified individual, and maybe that unidentified individual is your client, and now your client is incriminating himself for a bunch of, I see how there's a chain of Fifth Amendment incrimination. How do you get around the fact that the Supreme Court says, yeah, cool, and that's why his counsel or the defendant needed to say, respectfully, Your Honor, I refuse to answer that question on the grounds of my Fifth Amendment privilege, and the failure to do that is a waiver of the privilege? Because this is a classic penalty situation. Thankfully, very rare where a court itself, an open court, places someone in a classic penalty situation, but it happened here. So,  another government created a classic penalty situation of the Eleventh Circuit decision in McCaithin, comes from Minnesota versus Murphy, and as applied here, it boils down to, quote, whether there was any reasonable basis for the defendant to have thought that his invocation of his Fifth Amendment privilege would result in a penalty. So, I know in cases say that, I just candidly don't know how in the world you square that with our decision in Frazier, which seems to reject pretty much that exact argument. With Frazier, and I'll have to apologize to the court about Frazier, one thing I realized when preparing for this argument that I should have put in my reply brief is that in addition to being on a different issue, denial of acceptance of responsibility, Frazier's actually no longer good law. It was decided in June of 1992 under the 1991 guidelines, but after Frazier on November 1st, 1992, in Amendment 459, the Commission added Application Note 1A to provide that, quote, a defendant is not required to volunteer or affirmatively admit relevant conduct beyond the offense of conviction in order to obtain a reduction under Subsection A, a defendant may remain silent. That's a holding with the guidelines. That's not a holding with what the Fifth Amendment means. Right, but it, it, it, it, so, the biggest difference between this case and Frazier and Roberts, any other case, is that the court itself placed the defendant in a classic penalty situation in open court. You know, the, the, maybe, I, I, I, I'm looking at that, you know, the classic penalty situations, I think, you know, correct me if I'm wrong, there are a lot of those that, you know, relate to compliance with supervised release conditions, where you're asked to, you know, asked by pro, the probation office, did you, did you do this, did you do that? And even in those situations, you know, the, the, you know, what we've said is, you, the, the, the statement from the defendant has to be clear enough that you are, your, your answer will incriminate you, that invoking the Fifth Amendment will, will result in a penalty. And here, what's the basis for saying invoking the Fifth Amendment would have resulted in a penalty, when it looks like the district court from the colloquy raises the concern that anticipates your client may have had, which is, look, if I, if I give the guy's name, I might, you know, get myself in trouble. He may come after me or do harm. So the district court raises that issue, and I don't see how that indicates that your client would have thought that if he raised the Fifth Amendment, he would have increased his, he would have been subject to a penalty. It could clearly be both, right? But the problem is, when we go back to the test for classic penalty situation, it's, is it reasonable for him to have thought so? Judge Britt told him first that the identity of the accomplice and the fact he didn't identify the accomplice was, quote, a very critical part of this court's decision. Okay, we're here for sentencing. What is the language you, you read from the sentencing commission there? Yes, that's application note 1A. And again, I want to hear that. It is, a defendant is not required to volunteer or affirmatively admit relevant conduct beyond the offense of conviction in order to obtain a reduction. A defendant may... The import of the sentencing commission is kind of an interesting anomaly to me, but once the sentencing commission makes a rule of that sort, then Congress is given a certain period of time to do something. It doesn't do it. It kind of takes on the force of the law. The import being that, yeah, the Fifth Amendment can confer certain rights, but Congress can give you more. And in this instance, once the, I think the implication of whether the Fifth Amendment should have been invoked here is a question, and so you're sliding into trying to qualify as a classic penalty situation. And now we're identifying, well, does any of this fit? And we've got a lot of scenarios. What's most troubling about Judge Britt's determination here, and quite frankly, it was surprising to me that he went into this matter, that he did, and he even said it was troubling, and he expected for us to deal with it on appeal, is when you require a defendant to identify someone who's a part of the crime, we just had a case here this week, and it dealt with one who was part of an MS-13 gang. You may have a lot of reasons for not doing that, including your own personal safety. And not just the fact that that person could also be involved in a crime, but also implicating someone else incentivizes that person to then testify against you on matters that they may not even know about. I think it just opens up a complete quagmire. I do think, though, your greater problem here, at least from my perspective, is probably where the line of question is, is this part of a plea agreement? And could you have made this motion at some point in the time with the Fifth Amendment to make it explicit to the court to deal with it in that manner? And it probably would have shocked me if this particular judge wouldn't have dealt with it in that manner. So where you are now is, I'm intrigued with the sentencing commission because that does have the force of law in terms of how we can proceed on it, and what it means here. But how does that tie in what the sentencing commission did with the classic penalty? Did it change our analysis of that? I think it's just sort of like atmospheric. So the sentencing guidelines being the Bible of federal sentencing, this is not a part of federal sentencing. Using someone's silence against them, not a part of it. But then in terms of your question about the appeal waiver, at the time of the plea, many months before, four months before sentencing, Mr. Carter could not have reasonably contemplated that four months later the district court would violate his Fifth Amendment rights at sentencing, especially the way it did it, because this was not a cooperation plea. That was not in the case. Judge Britt brought that into the case in open court, placed him in this penalty situation in open court. Extremely rare for a court to do. But not completely unprecedented, right? Because some of the cases you rely on in support of the rule that doing this violates the Fifth Amendment, those cases are good for you, obviously in one sense. But they're bad for you in the sense that in those cases, at least the ones I read, defense counsel said, Judge, what you are doing violates my client's Fifth Amendment rights. Or, Judge, don't consider this. It violates my client's Fifth Amendment rights. And in this case, defense counsel never did that. Judge Wynn, can I respond? I'm out of time. Judge Hytens, the critical distinction is that those were not classic penalty situation cases. Those are for the bedrock rules of not using someone's silence against them. But this case is different, and that's why. This is a classic penalty situation placed on him in open court. If you look at Safferstein, Rivera, Giovanni, those weren't, right? They weren't placing the, they're saying you didn't tell the investigators, right, about this, and that's what bothers me, and therefore I'm going to punish you. That's very different than saying, Your Honor, you know, Mr. Defendant, tell me right now. Thank you, Your Honor. So if the judge literally said, will you identify your accomplice, and the defendant starts to turn to his lawyer, and the judge says, don't look at him, I'm talking to you right now, right? Don't look at your lawyer, you don't need to look at your lawyer, I probably would be with you if the judge had done that. Except here the judge did the exact opposite and said, would you like to consult with your lawyer for a minute? And then they consult, right? Like, why isn't the problem that the judge, how is it a classic penalty situation if the judge says, would you like to talk with your lawyer before deciding whether to answer my question? Because it didn't matter whether he talked to his lawyer or not, because the Fifth Amendment rights in that situation were self-executing. It is as if he spoke the words out loud. That is what applying classic penalty situation means. I think you're right on the effect of a classic penalty situation. The question is, when you look at the classic penalty situation cases, do they indicate that, you know, the defendant must think that if he or she invoked the Fifth Amendment, they would be penalized? And how do we, in that level of specificity, the actual invocation of the Fifth Amendment runs through those cases. Here, as Justice Hyten says, there's nothing where the defendant or counsel or anyone said, I'm worried that this might incriminate me, or I'm not going to testify because I might do it. And so I think that's an issue not only for whether or not it's, that only goes to the whether or not it's self-executing, it goes to whether that belief was reasonable. Right. So the question is, was it reasonable, right, that if he invoked the privilege and therefore didn't answer, he would get a higher sentence, and he knew he had to speak up, right? Judge Brett is telling him, this is very important, and I need to know it for your sentence. Is it whether he remained silent and got a higher sentence, or whether if he had invoked the Fifth Amendment, he would have gotten a higher sentence? I think those are one and the same, especially in a classic penalty situation case. All right. Let's hear from Mr. Gibbons, and you'll have some additional time, Mr. DeSommi Good morning, Your Honors. John Gibbons for the United States. I wanted to pick up on Judge Quattlebaum's last question, last exchange with the other side about whether, you know, it is the same thing to say, I don't want to answer because this would infringe on my Fifth Amendment rights, or to say, no, I'm not going to answer. The other side said they're one and the same, but they're not. So in Salinas v. Texas, the Salinas plurality said, it has long been settled that the privilege generally is not self-executing, and that a witness who desires its protection must claim it. This requirement exists for several reasons. One, it puts the judge on notice that the defendant is invoking a constitutional right and saying, Judge, I don't believe that you can compel me to give this answer. And so the judge is able to look at that and say, okay, well, let's evaluate the privilege claim. The second reason that this exists, this invocation requirement exists, is to allow the district court to evaluate the privilege claim. Obviously, you know, the district court might say, okay, well, tell me about that. Do you think this will, you know, do you think your accomplice will retaliate against you? Do you think you're in danger? One of those situations where you look at it and you can take it from a perspective of looking totally at the legal basis, the plea waiver, did you invoke the Fifth Amendment? But when you look at what actually was done, there's still a big question in your head that says, what's wrong with asking the defendant, who else was with you on this? In this instance, one person. Does he have to name everybody? And what is the temporal limitation on it? I mean, the district court judge, it's like, yeah, you got to alert. The reason you want to invoke it and the reason you want to say it is you want to make sure the trial judge has an opportunity to deal with it. But there's something so fundamental that you would think the trial judge just as a matter of, and did, in fact, recognize you, because he said, you know, the Fourth Circuit may have a little trouble with what I'm doing. What is the limiting thing? If we, this is the sort of thing, if we go in your direction, you know what's going to happen? We're going to see these cases coming all over the place. And the sentencing guideline doesn't include this. This is going to become a factor. And everyone, tell us who else was with you. Tell us about how many crimes you've done. And if you don't invoke the Fifth Amendment, boom, gone. Or, you know, tell us a lot of things that are not part of this. When nobody in the court was even thinking about this but the judge. He's the one that brought it up. And so I can see an element of surprise here. I'm not sure the other cases deal with it when it comes up. You have some indication, maybe the government asked for it or some indication, but you're in sentencing, everything is moving along, and all of a sudden he leans over and says, well, you had somebody else, didn't you? Who else was in this? Talk to your counsel about that and let me know if you want to tell me. And it affects his sentence. I mean, that just move away. The law is wonderful. We like to be able to do things systemically. And Lord knows it makes our job as appellate judges to say dismiss, it's in your way, but that's an easy case to write. And it fades away. Or to deal with an instance that you did not invoke it. But fundamentally something seems very wrong there beyond just self-incrimination in terms of what this implicates. Because as I alluded to, there are concerns beyond the self-incrimination. There may be a safety concern that somebody would not tell you this. Or a relationship concern. I mean, it could be in the son who was the accomplice. Could have been his wife. And I don't know if there's any prohibition on that, but it just does not follow this as good. Well, those are... Let me ask you this. Could Judge Britton have given this sentence without going there? Well, the United States asked for this precise sentence without going there. So why would he need to even go there? Well, Your Honor, it's because the defendant himself asked for leniency. He said, Your Honor, and let me... Even asking for leniency, did he have to go, did he have to do this? Well, Your Honor, I will concede, you know, that the Fifth Amendment, you know, it's a well-known principle. And that's why this doesn't occur very often. That's not my question. Judges don't go into this. I'm dealing with just the trial judge in a situation of you take an extra step to do something you don't have to do if you want to give him this sentence. Now, you may want to make it, the record look good or give some additional reason. I'm giving it because you didn't tell the co-defendant. But he didn't have to do that to get that sentence. Well, it didn't have to, but the judges have lots of sense of discretion. And defendant opened this door by asking for leniency. And this is what he said. It was poor judgment out of character. It was a one-day criminal spree. He deeply regrets and wishes he could go back in time and make different decisions. One-day crime spree, his ripeness for rehabilitation. Then defendant in his elocution said, this is not who I am. I had been evicted, I had been fired from my job, and I was abusing Xanax. So he's saying, you know what, Judge, I'm sorry. This will never happen again. The prosecution says, Judge, this isn't a one-day crime spree. This is an escalation of his previous behavior. The judge has to look at the defendant and say, OK, who's right? And the judge noticed in the PSR that the PSR noted that the defendant hadn't been identified. He says, OK, let's talk about that. Why didn't you identify the defendant? The defense counsel says, well, you know, he was asked, and then he requested a lawyer. He was never asked in the context of this case, which is kind of an out. And the judge says, OK. And identifying the defendant would have done what to enhance his belief that he had changed his life? What would that have done? Well, that's what the Roberts case says. The idea that willingness to cooperate is tied up with remorse and rehabilitation is just a fundamental logical relationship. That's the co-defendant there. And he identifies this person, and he knows if he does that, he might as well sign himself a death warrant. And that's a valid concern. He should have raised it. But if he wants to change, how are you going to raise that? Who's going to raise that? The defense counsel should have raised that in the hearing himself. He should have said, you know what, Your Honor, my defendant has serious safety concerns about revealing this information. So I'm asked, the district court seemed to acknowledge that issue. That's the one thing he looked to me like reading it, he thought might have been the basis. And he imposed a sentence anyway. If that, I mean, let's assume he did articulate that concern. What's in the district court rule the same way he did? It says, I appreciate that concern, but it's tied up in remorse. I'm doing the sentence I did. Yeah, and let me clarify. I mean, it's a valid concern in the abstract. I don't mean it's a valid concern here, because the defendant didn't raise it. This is all after the fact speculation of... My question is, if he did raise it, does that prevent, does that override the district court saying it's tied up in remorse? I mean, those are two things in tension. I don't know the answer. I'm asking, I mean, what would... Well, that's not a constitutionally protected reason to not answer a question. The only privilege against answering a question is self-incrimination. Substantively improper sentence we look at for that reason, but not a Fifth Amendment issue. Exactly, Your Honor. And that's the point. The defendant needed to... What happened was the defendant refused to answer and the district court said, well, I don't think you're being up front with me right now. I think you're not remorseful. If the defendant didn't raise it, you didn't raise this issue either, that he should talk, review this defendant for purposes of sentence. That didn't come from you. That came from the judge. And so, I mean, you're in the middle of a court. No one is even thinking about this. I don't think anyone even thought this was going this way, particularly this judge. I mean, you could not have possibly thought it. It comes up and it starts like a snowball down a hill and all of a sudden, boom, tell us who it is or... And he says, I won't... Basically just says, won't do it. I will not do it. I think he asked, what was the question? Will you... What was the question? It was, do you want to tell me who your accomplice was? And his answer is no. Was there anything further beyond that? No. But I want to finish that. He said, do you want to tell me who your accomplice is? Not, if you don't tell me who that accomplice is, your sentence is going to be affected. Exactly. He didn't say that. He did not. So all he has is, do you want to? And what's wrong with saying no, I don't want to. I don't want to be in court today. I don't want this sentence. But I mean, how does that increase a sentence? It's a truthful statement. It seems to me, even if the judge does go there, there ought to be something else to use that as a basis other than, do you want to? I mean... Well, Your Honor, what I think you're getting into is whether it was a reasonable inference. I understand that. I understand that. And that is squarely covered by the appeal waiver. That's the thing. I love the law. The law has to make sense to me. Can we go back to page... But I don't... I mean, I was a government lawyer. Sometimes you're trying to defend the judgment you're trying to defend. I don't think it's plausible that the judge had not made clear that his refusal to answer was not going to go well for him. Because go back to page 59 of the JA, the court. Was Mr. Carter interviewed about it? Mr. Singh, my understanding. And they had this whole discussion. And then he says, the court. This is a very critical part of this court's decision. Do you want to talk... I don't know how in the court says this is a very critical part of the court's decision. The court is not saying, it matters to me whether you're willing to ask the question I'm about to ask you. Sure. Absolutely. And we acknowledge that it was important to the judge. But... The defendant said no. He had been... He did so with the judge having put him on notice. This is maybe their argument, a classic penalty situation. The judge just says, hey, I'm about to ask you a question. This question matters a lot to me. Did... Right. Like, how would a reasonable person in his client's position not understand that his refusal to do it was about to lead to a higher sentence? Well... I would have certainly understood that the judge was telling me if I didn't name my accomplice, my sentence was going to be higher than it was otherwise going to be. I mean, yeah, it would be reasonable to think that. Essentially, you will not get leniency. Okay. Yeah. You could phrase it like that. You could phrase it either of the ways. If everything is to say you're going to get a higher sentence for not doing it, then I'm not giving you the leniency. Well, I mean, and this... I don't... But I don't understand how in a post-Booker world that makes any sense. This brings up the problem with the benefit-penalty distinction that some cases rely on. In the end, it just relies on framing. You know, it depends on how you think about it. When in reality, the broader issue is, you know, the Fifth Amendment protects against compelled self-incrimination. Isn't that the issue that, you know, I think it'd be hard for you to argue that not answering the question, it was reasonable for the defendant to believe that if he did not answer the question, it was not going to turn out good for him in the sentence. I think the harder question is whether, had he invoked the Fifth Amendment, would he have still been treated differently in that situation? I don't see... I think that the hard part for the defendant is that. Does it... Is there evidence that had he invoked the constitutional protection, he would have been treated differently? Absolutely. And so let me go to something that kind of started at the beginning. The thing, the issue we talked about, the exception to the waiver and for constitutional problems. You know, if you read the Archie case, I think it looks like firmly established, modifies fundamental rights and constitutional problems. You know, we have the Singletary, which talks about them different. So we've got to look at those two things and figure out what to do. A, do you have a position on whether it has to be firmly established constitutional right? Related to that, what level of generality do we look at the constitutional right? And then a third part of that question, I'm sorry to give you three, is if you assume the recent Singletary case is the way we look at it rather than the Archie case, is that is the constitutional rights that arguably don't have to be firmly established? Are they limited to certain constitutional rights like the consideration of race and things like that? OK, so I'm sorry. Sure. The answer to your first question is yes, we do have a position. The answer to your second question is it does matter on the level of generality. And we would submit that the level of generality. What is your, you have a position on question one, but what is your answer on question one? Well, the position is the answer to number two. The level of generality that you should look at this is the way defendant himself framed it on page one, sentence one of his brief. My first question was, does it have, does the constitutional right have to be firmly established? Yes, it does. How do you square that with Singletary, which quotes Marsh, which in turn quotes a decision that's earlier than the decision that eliminates the two requirements? You have to anticipate that question. I went back, I'm trying to fight it, but I'm representing that. So Singletary says they're disjunctive. It quotes a case called Marsh from 2019, which is after Archie. But the case from 2019 in turn quotes a case that's from before Archie that states that is a freestanding requirement. Okay. I would have to candidly go back in and look at those cases. But as far as, you know, whether this was a violation of a constitutional right, it just makes sense to have to have some level of, of firmly established cage law, because you can say, you know, if you zoom out, okay, the fifth amendment is firmly established. So any fifth amendment claim escapes the appeal waiver? No, not, that doesn't make sense. No, not any fifth amendment claim, because the exception even as phrased is a constitutional, what this means, a constitutionally impermissible factor, such as race. So minimum has to be characterized as a constitutionally impermissible factor. And not every constitutional violation is going to be easily characterized as a constitutionally impermissible factor. Of course. Yeah. And then I don't know what such as race means. I mean, other than it means race, it clearly means race. It almost certainly means religion. And it almost certainly means a national origin. Yeah. It would be the judge. I'm going to sentence you longer because you're Catholic, et cetera. You know, that kind of thing. And, and that's the point. Those are different in kind. The, the issue here is the way defendant frames it. Neither the Supreme Court nor this court have yet determined whether a district court violates the fifth amendment by imposing a harsher sentence in light of a defendant's failure to cooperate. That's true now. That was true when defendant was sentenced. Oh, I agree, it's probably not firmly established. Well, that's true when defendant was sentenced. So when he entered into this plea agreement, he, you know, reasonably we can infer that his counsel was aware of this possibility that this could come up as a violation of English law about it. And going for my last point, I wanted to go to the, the penalty situations because that came up a lot in, in the other side's argument. Counsel said the, the way to determine whether something is a penalty situation is whether there was a reasonable basis defendant thought his information would be incriminating. But that's not an accurate way to characterize it because it collapses the incrimination with the compulsion. The penalty situation has to do with what the government is doing to elicit this information. And in McCune, the Supreme Court's plurality said, determining what constitutions or what constitutes unconstitutional compulsion involves a question of judgment. Courts must decide whether the consequences of an inmate's choice to remain silent or closer to the fiscal torture against which the constitution clearly protects or the de minimis harms against which it does not. Do you agree with me that we'd have a much harder case if what had happened here was what I posited to your friend, if the judge said, don't look at him, answer my question? Do you agree that would be a much harder case? And it is important that the judge here said, do you want to take a second to confer with counsel? And they did confer. And after conferring, there was no mention of the Fifth Amendment or even Judge Wynn, there was no mention of fear of retaliation or other reasons why the, the defendant might not want to reveal this information. And had he... Okay. But that doesn't, but so the lawyer thing seems like it helps, but it doesn't get you all the way. And let me give you the example why, which is like government employees. Like, so there's the Garrity line of cases that say, you can't say talk or you lose your job, right? And in those cases, it wouldn't matter if you had a lawyer in the room with you. The inherent penalty situation is the part where internal affairs says to you, talk or you lose your job. And whether you have counsel sitting next to you or not, does not change the fact that that would be a penalty situation, right? Well, I don't know if that's true. Talk or you lose your job and you can consult with counsel. That might change the equation, but you don't have to reach that. You don't have to agree with me on that in this case. What happened was the defendant refused to answer and he didn't give the court any reasons to not think that his, his refusal to answer was just from intransigence. Isn't Roberts kind of important here, given the lack of invocation of the Fifth Amendment? I mean, Robert seems to say it's not enough for us just to sit here and, you know, speculate, you know, talk about potential possible chain of events that could lead to incrimination. It seems to say something like, isn't there a substantial likelihood or substantial something? Absolutely. So there's got to be something more than us just sitting here thinking it could happen. I agree. I can see events how identifying a comp was could lead perhaps to some additional criminal liability. But that's not, Roberts is a different case, so it's not straight on point. But isn't that part of it at least persuasive to us? Absolutely. And, you know, the information requested here on this record, I don't think you can say that it's facially likely to be incriminatory because like Judge Heitens was talking about, he had pleaded guilty to these crimes. He had already admitted, I did this. The existence of the accomplice was not in question. He had also been arrested by the state earlier, right? So there was no mistake. And the state had dismissed its own charges a year before. So, you know, we don't know if defendant reasonably thought he would be incriminated because he didn't raise that. But even if he had, it wouldn't be reasonable because there was no basis on this reasonable. He had already admitted guilt. His plea agreement foreclosed further action by the U.S. attorneys. And, you know, it just, the accomplice's identity is not an element of his charges. And, Your Honors, I see my time is out. And unless there are any further questions we'd ask to affirm. Thank you very much. We'll hear from you. Pronounce your name for me so I don't mull it again. Desimone. Desimone. Thank you. Thank you. The government started with the general rule. Privilege is not self-executing. We don't disagree. The question here is the classic penalty situation is the exception where you do not have to invoke the privilege. And I urge you to go back to the test from McCaithin in Minnesota versus Murphy, whether there is any reasonable basis for the defendant to have thought that his invocation of the privilege would result in a penalty. Um, can I ask you on the incrimination question? I think it's implicit, but I want to make sure that we're all in agreement. So let's imagine the true state, let's counterfactual or imagine this is either the true state of affairs or this is what your client says to the court. So instead of saying no, imagine your client said, no, Your Honor, with all due respect, I, it's just, it's a firm belief of mine that you don't tell on other people. You don't incur. My mom taught me that you don't tell it other people. You don't incriminate other people. So with all due respect, Your Honor, I respectfully declined to answer that question. That's not protected by the fifth amendment. And that, and that, that is his truthful and complete reason for why he doesn't answer. You agree that's not protected by the fifth amendment, right? The fifth amendment doesn't create a general right to not talk. It creates a right not to incriminate yourself. Correct. Right. Okay. So in that situation, I think the judge could pretty clearly increase his sentence without, well, let me put, maybe, maybe they can, maybe they can't for guidelines reasons, but as a matter of the fifth amendment, the judge can throw the book at that defendant without implicating the fifth amendment at all, right? Perhaps. I think questions for the other, another day, uh, about penalty versus leniency. Um, why? Because if that, but that's not self-incriminating again, the fifth amendment conveys no. Sure. Okay. You're right. Your premise, your premise was the, he wasn't worried about incriminating himself. He's being honest. I just don't believe in doing so. And the judge could say, well, it's now the maximum. Just to intervene a little bit. And would the answer be the same? If he said, I'm, I'm worried that if I do it, I'll, the guy won't come to. Maybe if that's, if that's his only thing in his brain, then yes. Those issues I don't tattle and I'm worried for my safety or my family. Those aren't fifth amendment issues. You agree with that? Right. So, but. But ultimately what it means is that the defendant's answer has implications in terms of how the judge can use it. If we follow that line of reasoning, that if the judge says, well, this is very important to me. Do you want to, uh, reveal the defendant, uh, reveal the code, the co-defendant? And he says, no. Well, then it seems to me, there's a follow-up question because the reason he said no is important. And maybe he should have asked, why are you saying no? At that point, he could have said fifth amendment or mama told me not to do it or some other reasons. There's something fundamentally wrong about this procedure. It goes on. It's almost like you're being led down a path. Um, you talk about not being clearly established to something that hasn't been done basically before. And you find yourself, it's important that you tell me or important in a foot is sentencing. Uh, do you want to do it? Uh, it's it, I'm not saying it's a due process situation, but it certainly does have some implications here beyond what's here because the answer he gives, if he's more explicit, well, your honor, that would just, it might just involve some other things. I'm involved in the crimes of other things. It might, it might open up the doors too much or mother told me to do it. Uh, yeah, I agree. Something just wrong. There, there is something wrong. And remember in all these classic penalty situations, the person doesn't doesn't invoke in Gardner versus Broderick. They didn't invoke. And that's why we're here. Um, now the, the, there was a question judge win about, um, judge Brit could have done this without, without, you know, without going here. Right. But on page, if I could finish, um, on page 58 to 59, the government is actually saying the top of his guidelines for count three is 63 months. We think that's reasonable. Your honor. We think to go below a total sentence of, or I'm sorry, go below 60 months would be unreasonable. So the government's really saying go 60 to 63. And, um, but here there's no question that the sentence ends up higher than it otherwise would have been, um, because he remained silent. And so we asked this court to send further questions. Thank you, your honor. I want to thank both of you, Mr. Gibbons, Mr. DeSimone, um, for your arguments. We'll come down in great council and and then we will proceed to the next case immediately.
judges: James Andrew Wynn, A. Marvin Quattlebaum Jr., Toby J. Heytens